John WARD and Art Weber, Individuals,
d/b/a Powerguard-Louisville,
Appellants,

v.

COMMONWEALTH of Kentucky ex rel.
Robert F. STEPHENS, Attorney
General, Appellee.

Court of Appeals of Kentucky.

April 7, 1978.

Rehearing Denied June 2, 1978.

Ronald L. Gaffney, Barnett & Alagia, Louisville, for appellants.

H. Regina Cullen, Asst. Atty. Gen., Consumer Protection Div., Robert F. Stephens, Atty. Gen., Frankfort, for appellee.

Before MARTIN, C. J., and COOPER and VANCE, JJ.

MARTIN, Chief Judge.

This is an appeal from a partial summary judgment granted in Franklin Circuit Court directing the appellants to comply with an investigative demand issued by the Attorney General under authority of the Consumer Protection Act. Appellants challenge the issuance of the demand on the ground that there is no allegation of a violation. They further argue that the Attorney General has not met the statutory requirements for issuance as upheld in *Commonwealth v. Pineur,* Ky., 533 S.W.2d 527 (1976).

Initially, this case presents a procedural problem because a panel of this court dismissed an earlier appeal of this case, number CA–689–MR, on the same issue. That dismissal was of an interlocutory order which did not state it was a final order as required by Civil Rule 54.02. See *Huff v. Wood Mosaic Co.,* Ky., 454 S.W.2d 705 (1970). After the dismissal, no further hearings were held, nor were further pleadings filed. The only action taken by the trial court was the entry of an order reaffirming the partial summary judgment. This order does state that it is a final order as required by the Rules. This procedure is not good practice, because the secor l order does no more than reinstate a dismissed appeal. The proper procedure would be to redraft the order in its entirety, state that

interlocutory relief is sought, and include the statement of finality required by Civil Rule 54.02. This error alone is not sufficient to warrant another dismissal; so we now turn to the merits of the case.

The facts of the case are not in dispute and were detailed in affidavits filed with the trial court. Appellants, John Ward and Art Weber, operated a proprietorship known as Powerguard-Louisville, which began business on April 1, 1976. Powerguard-Louisville sells and installs electrical devices designed to aid in the economical use of electrical energy. The potential purchasers are both commercial and residential.

These proceedings began on August 19, 1976, with the issuance of an investigative demand by the Consumer Protection Division of the Office of the Attorney General under KRS 367.240(1) (1972). The demand directed Mr. Ward to produce for the Attorney General's use and inspection all documents and information relating to the corporate structure of his companies which produced or sold a product designed to reduce or regulate the usage of electric power.

The appellants did not comply with the investigative demand but sought relief by filing a complaint in the Franklin Circuit Court under the provisions of KRS 367.-240(2) (1972) and 367.260 (1972). Their first challenge to the investigative demand was its failure to allege any violation of the Consumer Protection Act. The Attorney General answered the complaint and moved for a partial summary judgment on a counterclaim seeking to enforce the investigative demand. Affidavits and other documents were filed by both parties. The trial court, while conceding some merit to appellants' claim and reserving his ruling on all other issues, concluded enforcement of the investigative demand must be granted by partial summary judgment because of the holding in *Commonwealth v. Pineur, supra.*

The pertinent statute, KRS 367.240(1) (1972), provides that the Attorney General may issue an investigative demand under the Consumer Protection Act in the following situations:

When the attorney general has *reason to believe* that a person has engaged in, is engaging in, or is about to engage in any act or practice declared to be unlawful by KRS 367.110 to 367.300, or when he believes it to be *in the public interest* that an investigation should be made to ascertain whether a person in fact has engaged in, is engaging in or is about to engage in, any act or practice declared to be unlawful by KRS 367.110 to 367.300 . . . (emphasis added)

Nowhere in the statute is there a standard for determining what facts satisfy the conditions precedent to the issuance of an investigative demand.

Appellants argued that the investigative demand must be founded upon a substantial finding or allegation of wrongdoing to be valid. However, this argument has been partially resolved in *Commonwealth v. Pineur, supra,* the court stating 533 S.W.2d at 528:

Our determination is limited to whether there is either a statutory or constitutional requirement that a demand authorized by KRS 367.240 recite on its face the reason or grounds for its issuance, and the answer is no.

The Attorney General adopts this statement to support the position that it is his sole responsibility to determine whether or not to issue an investigative demand. We disagree. In *Pineur,* the court held that while the investigative demand did not have to set forth the reason for its issuance, the courts would look behind the demand. Judicial review of administrative rulings is a basic part of our legal system and is designed to protect against mistaken or arbitrarily issued investigative orders. The constitutionality of the whole Consumer Protection Act was before the court in *Pineur.* By holding the act constitutional, the court did not vest the Attorney General with the unbridled authority he seeks in the present case. The holding of *Pineur* was well stated in the next to the last paragraph of the opinion, at 530:

In this case the record as a matter of law supports the Attorney General's au-thority under KRS 367.240 to enforce production of some of the information specified in its demand. Whether it would be unreasonable to require production of all of it is an issue of fact not finally determined by the judgment, and we do not pass on that question.

In *Pineur,* the record to which the court referred contained thirty-eight customer complaint letters, affidavits of numerous dissatisfied customers, and the affidavit of one former salesman. On these facts the Attorney General determined that an investigative demand should be issued, and the court agreed. In the present case, to support his motion for partial summary judgment, the Attorney General merely filed one attorney's affidavit explaining the basis for the issuance of the demand. The affidavit was based on a letter from a representative of the Kentucky Association of Electrical Cooperatives. It contained the transcript of a Florida television program and other documents which allegedly tested appellants' product and found it deficient. Without further investigation into the truth or falsity of these statements, the Attorney General has accepted them at face value. The record contains no complaints from customers, nor does it contain the affidavits of anyone who tested appellants' product and found it defective. The investigative demand does not state why the Attorney General wants the documents he seeks, nor does it allege any violation of the Consumer Protection Act.

The Attorney General has failed to meet the statutory standard required for the issuance of a demand. As held in *Pineur,* at 528, "the statute predicates the issuance of a demand on one of these two conditions precedent . . ." in KRS 367.240(1). As stated, these conditions precedent are that the Attorney General must have reason to believe that a violation of the Consumer Protection Act is being committed, or that the public interest requires his investigation into potential violations of the Act. There can be no question that the facts must be established before the demand is issued. To use the demand

as a means of establishing either of the conditions precedent flies in the face of the legislative purpose of the Consumer Protection Act. As held in *Pineur,* the courts will review the conclusions of the Attorney General so as to protect against arbitrary or mistaken issuance of investigative demands. The one letter relied upon by the Attorney General was insufficient to satisfy either of the legislative prerequisites.

Consumer protection legislation has received widespread approval in the courts. Some statutes recognize the need for balancing the legislative purpose of protecting the consumer against the need to allow reputable business practices to continue so long as they are not injurious to the public as a whole. An example is the Iowa statute, upheld in *State v. Limbrecht,* 246 N.W.2d 330 (Iowa 1976). In a case involving the alleged illegal sale of cemetery merchandise and services, the court held that the Attorney General was required to prove reliance by the consumer upon the representation of the seller and to prove damages in order to enjoin further sales. We have a less stringent standard in Kentucky. In Ohio, as in Iowa, the Attorney General does not have the administrative subpoena power which our legislature has given. In those and many other states, he must first seek injunctive relief in the courts and then allow his investigation to follow normal discovery channels. *See, e. g., Liggins v. May Co.,* 44 Ohio Misc. 81, 337 N.E.2d 816 (1975); *Commonwealth v. Ziomek,* 352 A.2d 235 (Pa.Cmwlth.1976).

In *Commonwealth v. Pineur, supra,* the court relied heavily on the decision of *United States v. Morton Salt Co.,* 338 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401 (1950). In that case, Mr. Justice Jackson was faced with interpreting a decision of the Court of Appeals of the Seventh Circuit which had affirmed the modification of a cease and desist order issued by the Federal Trade Commission. That case was in the post-judgment stage. Morton Salt Company and others had been investigated by the Federal Trade Commission and found guilty of violations of the unfair competition sections of the federal antitrust acts. 15 U.S.C.A. § 45.

An order of the Federal Trade Commission directing the Morton Salt Company and others to cease and desist from earlier anti-competitive activities had been issued and upheld. That order became final and the Federal Trade Commission let matters rest for a period of time. Two years later it demanded detailed reports of the defendants in the earlier case in order to establish their compliance with the cease and desist order. The companies refused. The decision of the Supreme Court upholds the right of the Federal Trade Commission to require these post-judgment reports to support compliance.

■ We certainly agree with the statements quoted from Justice Jackson in *Pineur.* They are equally applicable in the present case. We may not inquire under *Pineur* whether or not the investigative demand stated a reason for its issuance on its face. However, under KRS 367.240(2) and 367.260, after the filing of a complaint in Franklin Circuit Court, it is the duty of the court to examine the documentation and facts upon which the Attorney General based his decision to issue the demand. We find the grounds for issuance of an investigative demand against appellants insufficient. As held in *Morton Salt, supra,* and adopted in *Pineur,* the responsibility of the court is to protect against the issuance of arbitrary orders. In the present case, the Attorney General has issued an arbitrary order that does not meet the requirements of KRS 367.240(1). The granting of summary judgment to the Attorney General was improper.

The partial summary judgment is reversed, and the case is remanded.

All concur.