Jackie NELSON–LIZARDI, Appellant,

v.

Ismael Roberto LIZARDI, Appellee.

No. S–9803.

Supreme Court of Alaska.

June 14, 2002.

Julie L. Webb and Andrew Harrington, Alaska Legal Services Corp., Fairbanks, and Robert H. Hickerson, Anchorage, for Appellant.

Edward R. Niewohner and Lawrence F. Reger, Niewohner & Associates, P.C., Fairbanks, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

CARPENETI, Justice.

## I. INTRODUCTION

Jackie Nelson–Lizardi and Ismael Roberto (Bob) Lizardi divorced in 1990 but the divorce decree did not deal with the division of Bob's pension because the pension had not yet vested. In a hearing on December 1, 1999, the superior court ordered Jackie to file a request for a formal accounting by December 15, 1999 or face waiver of any claim to the pension. Jackie did not file a request for a formal accounting on December 15, but she did file a notice stating that she did not have enough information to make the decision as to whether a formal accounting was appropriate and apprising the court of her efforts to obtain the needed information. The parties continued to exchange relevant information for several months. But on June 14, 2000, the superior court issued a decision denying Jackie any right to the pension. Because Jackie was entitled to a decision on the merits on the issue of awarding the pension entirely to Bob, we reverse the decision of the superior court. We remand the issue of division of the pension for further proceedings.

## II. FACTS AND PROCEEDINGS

### A. Facts

Jackie and Bob were married in 1980. Jackie filed for divorce in 1989 and trial was held in January 1990. The superior court issued an amended decree of divorce on April 30, 1990. During their marriage, Jackie and Bob accumulated several pieces of personal and real property [1] that made up the marital estate.[2] Jackie and Bob accumulated several debts related to the farming business during the marriage.[3]

In the divorce decision, the superior court distributed the assets and liabilities of the marriage by giving Jackie, in pertinent part, the house and the two loans secured by the house, as she was the party most likely to have an interest in paying off those loans. Bob was given the eighty-acre parcel with the remaining debt on that property and the agricultural loans, with the exception of loan C 941 (due to a dispute with the state as to the value of this loan). Loan C 941 was a loan secured by all farm equipment owned by Bob. The amount of this loan was in dispute because Bob stated that the equipment was sold to the Whitestone farm and the purchase price was paid to the state but the state had not yet deducted the amount from the loans. The superior court did not distribute Bob's pension because it was unvested, and instead delayed the distribution until the pension vested.

In October 1994 the state settled the lawsuit that was pending against Bob during the divorce proceedings. The state released Bob from all of the outstanding Agricultural Revolving Loan Fund loans, including the two loans secured by the house and awarded to Jackie in the divorce. Jackie claims to have made efforts to set up arrangements to pay the loans secured by the house but was told that the state was unable to discuss the matter with her because the lawsuit was against Bob. Bob claims that he was forced to convey several items of real and personal property to the state in order to discharge the loans. However, the settlement agreement states only that Bob was to convey a John Deere hay baler, a mulcher/packer, and a wagon. There is no evidence that Bob had to convey any real property to the state in the agreement.

### B. Proceedings

Bob retired in 1998 and began receiving his pension benefits. In February 1999 Bob filed a motion to modify child support because his income had decreased by more than fifteen percent. In April 1999 Jackie filed a supplemental opposition to Bob's motion that included several counter-motions, including a motion to divide Bob's pension. The superior court held an evidentiary hearing on December 1, 1999 to resolve the issues

---

**1.** Although complicated, a detailing of the property and debts accumulated during the marriage is important to an understanding of the quandary facing Jackie in deciding whether to request a formal accounting of Bob's pension.

**2.** Bob bought a forty-acre parcel in 1977 on which they built a house and had a working farm. The parties acquired an eighty-acre parcel of agricultural land and a 280 acre parcel of agricultural land. Bob also had an unvested pension through the Laborer's Union that was earned, in part, during the marriage.

**3.** In particular, loans totaling $12, 232.48 on the house and $19,115.74 of the purchase price on the eighty-acre parcel had yet to be paid off at the time of the divorce. The division of the marital property was complicated by the fact that the state started proceedings against Bob in order to recover on six agricultural loans, including those on the house, borrowed from the Agricultural Revolving Loan Fund. The four loans not secured by the house were secured by various

pieces of farm equipment, the 280–acre parcel, and crops. These loans were awarded to Bob in the divorce, with the exception of the loans on the 280–acre parcel. The 280–acre parcel and the loans on this property were not awarded in the divorce proceeding because there was a dispute at the time of the divorce as to who owned the parcel.

Bob had sold the 280–acre parcel to Paul Mertz in 1985. Mertz agreed to take over the loan payments to the state but apparently did not make the payments. The state evidently agreed to the land transfer but then sued Bob for the arrearage. The suit was then stayed until it was determined what Mertz's responsibility was as to the parcel. In June 1990 Mertz entered into a settlement with the state in which it was determined that he was the owner of the 280–acre parcel. Under Mertz's settlement, the 280–acre parcel was conveyed to the state and, therefore, was not part of Bob and Jackie's marital estate.

between the parties. Jackie did not attend the hearing but her attorney did.

At the hearing, Bob argued that he was entitled to an offset against what was owed to Jackie on the pension in the amount of the loans secured by the house plus interest from the date of settlement. Bob argued that the loans plus interest currently totaled approximately $24,000. Jackie's attorney stated that she felt uncomfortable discussing the issue of the offset because Bob had not filed anything formal on the issue, other than the opposition to Jackie's motion, and no concrete numbers or evidence had been offered. Jackie's attorney stated that she was not sure of the value of the pension or the amount Bob claimed as an offset and that she would need some time to review the evidence. The court thus ordered Jackie to file a motion for a formal accounting of the pension by December 15, 1999, or "that issue is just going to drop out of the case," that is, Jackie's rights to the pension would be presumed to be offset by settlement of the loans secured by the house.

On December 15, 1999, Jackie filed an "Advice of Counsel" stating that she did not have adequate information on the pension to make an informed decision as to whether to request a formal accounting. The "Advice of Counsel" stated that Jackie was waiting for information promised by Bob and, once she received this information, she would file a request with the court within thirty days. Alaska Laborers Construction Industry Trusts sent Bob a letter on December 14, 1999 detailing the specifics on Bob's pension. Bob's attorney forwarded the letter to Jackie's attorney on December 21, 1999. Bob's attorney sent Jackie's attorney a release of information so that Jackie could obtain information on the pension on January 10, 2000. The release expired on January 30, 2000 and Jackie's attorney failed to ask for the information before the release expired. Jackie made further requests for the information and for another signed release of information, but she was unable to obtain either.

Sometime in the spring, Jackie retained the services of a professor of economics, Paul Taylor, Ph.D., to value the pension. Taylor estimated in an affidavit that the pension was worth substantially more than the figure offered by the trust company. Jackie filed Taylor's affidavit on June 26, 2000. Taylor estimated that Jackie's marital portion of the pension was $33,919.50, or $246.93 per month, while the trust company had estimated that the marital portion of the pension was $24,190.00, or $151.94 per month.

Jackie filed a discovery request on May 2, 2000 in which she requested a signed release of information and a copy of Bob's most recent tax return. On May 10, 2000 Bob requested a hearing on uncovered medical bills and pension rights. This request was stamped "not used" by the superior court. Then, on May 19, 2000, Bob filed a proposed order regarding pension distribution. This proposed order was signed by the superior court on June 14, 2000. The order stated that the superior court entered its oral findings on the record on December 1, 1999 and, because Jackie had not filed for a formal accounting of the pension, she was entitled to no interest in the pension. On June 30, 1999, the superior court denied Jackie's motion for reconsideration.

Jackie appeals the decision of the superior court denying her an interest in the pension, denying her motion to compel discovery, and denying her motion for reconsideration. Because we conclude that we need to reach only one aspect of the first issue, we do not address the motion to compel discovery or the motion for reconsideration.

## III. STANDARD OF REVIEW

 We review procedural decisions of the superior court under the abuse of discretion standard.[4] For example, we have held that a superior court's denial of a motion on timeliness grounds and denial of a continuance are reviewed for abuse of discretion.[5]

---

4. *See Morgan v. State, Dep't of Revenue*, 813 P.2d 295, 297 n. 4 (Alaska 1991).

5. *See, e.g., Red Top Mining, Inc. v. Anthony*, 983 P.2d 743, 746 (Alaska 1999) (stating that we review the "denial of a motion to intervene on

timeliness grounds for abuse of discretion") (citing *Mundt v. N.W. Explorations, Inc.*, 947 P.2d 827, 830 (Alaska 1997)); *Parson v. Marathon Oil Co.*, 960 P.2d 615, 618 (Alaska 1998) (stating that denial of continuance for opposition to motion

We will reverse a ruling for abuse of discretion only when, after reviewing the whole record, we are left with a definite and firm conviction that the trial court erred.[6]

## IV. DISCUSSION

### The Superior Court Erred in Denying Jackie a Marital Share of Bob's Pension as a Penalty for Not Requesting an Accounting and without a Determination on the Merits.

Jackie argues that the superior court erroneously failed to apply the proper standard to the division of the pension. But the superior court did not reach the merits of the division of the pension. Its ruling was based on Jackie's failure to comply with the court's order to file a request for a formal accounting by December 15, 1999. We therefore must determine whether the superior court erred in summarily awarding the entire pension to Bob as a penalty for Jackie's failure to request an accounting.

We addressed a similar issue in *Gamble v. Northstore Partnership.*[7] In *Gamble,* Northstore Partnership was sued by the Gambles for reformation of a recorded grant of easement.[8] Six days before the close of discovery and one and one-half months before trial, Northstore moved for summary judgment, which was granted following oral argument.[9] The superior court noted that the real issue was whether the Gambles had had enough time to oppose the summary judgment motion, but it declined to grant an extension because the Gambles failed to make a specific request for relief under Alaska Civil Rule 56(f).[10] Alaska Civil Rule 56(f) allowed for a continuance in order to obtain more discovery to oppose a motion for summary judgment.[11] We held that while the Gambles' submission of an "Affidavit of Attorney in Opposition to the Motion to Amend and Motion for Summary Judgment" did not expressly mention the continuance provision, it "clearly set forth the Gambles' desire and justification to undertake additional discovery."[12] Therefore, because the Gambles had "made an unambiguous request for a continuance with which to undertake additional discovery," we held that the superior court abused its discretion in not permitting this discovery.[13]

The situation here is strikingly similar. The superior court denied Jackie her share of the marital portion of the pension because she failed to file a request for a formal accounting by December 15, 1999. But Jackie filed an "Advice of Counsel" on that date stating (1) that she was unable to make an informed decision about pursuing the formal accounting without additional information from Bob; (2) that she was expecting to obtain more information from Bob once Bob received a letter from the pension plan administrator; and (3) that she would file a request for a formal accounting within thirty days of receipt of the information requested.

We recognize that a trial court has broad discretion to set and enforce deadlines for filing pleadings and completing discovery.[14] However once a deadline has passed with a party failing to take a required action,[15] and

---

for summary judgment reviewed under abuse of discretion standard).

6. *Morgan,* 813 P.2d at 297 n. 4.

7. 907 P.2d 477 (Alaska 1995).

8. *Id.* at 479.

9. *Id.* at 480.

10. *Id.*

11. *Id.* at 485 n. 6.

12. *Id.*

13. *Id.* at 487.

14. *See Sykes v. Melba Creek Mining, Inc.,* 952 P.2d 1164, 1169 (Alaska 1998) (stating that "[o]rdinarily, the choice of a particular sanction for a discovery violation is a matter committed to the broad discretion of the trial court, subject only to review for abuse of discretion"); *Rutledge v. Alyeska Pipeline Serv. Co.,* 727 P.2d 1050, 1054 (Alaska 1986) (stating that "[r]egardless of the timing of the alleged actions, the trial court has broad discretion in allowing or denying proposed amendments [to pleadings] after the initial period has passed under either Rule 15(a) or 15(d)").

15. We note that, while Jackie failed to file a request for a formal accounting, she did file a paper that explained her predicament to the superior court. Therefore, this is not a situation in which a deadline completely passed without a party taking any action at all.

the superior court fails to enforce the deadline for a substantial period of time, and the parties proceed to work to resolve their dispute, basic fairness requires that the superior court give advance notice and an opportunity to cure the delinquency before it rules against the party for failing to take the appropriate action.

The superior court never ruled on the merits of the issue of division of the pension. Nor did it in any way indicate that Jackie waived the issue by not filing for a formal request by December 15, 1999. The parties continued to conduct themselves as if division of the pension was still an issue for nearly six months. Bob provided a signed release to obtain information that was valid until January 30, 2000. The parties exchanged substantial correspondence on the matter. The first mention of any concern about timeliness is found in a letter from Bob's attorney to Jackie's attorney dated March 8, 2000, in which Bob's attorney declined to provide an updated release of information for the pension fund. Even then, it would be more than three months before the superior court would rule that Jackie's efforts to obtain her portion of the pension would be foreclosed by what the court considered to be a missed deadline six months earlier. We are left with a definite and firm conviction that the superior court erred in denying Jackie a ruling on the merits under these circumstances.

■ Because Jackie's pension rights claim was dismissed on procedural grounds, the superior court had no occasion to apply the standard articulated in *Wanberg v. Wanberg*[16] to the division of the pension. Alaska law requires that property be divided "in a just manner and without regard to which of the parties is in fault. . . ."[17] Moreover, "the court, in making the division, may invade the property, including retirement benefits, of either spouse acquired before marriage when the balancing of the equities between the parties requires it. . . ."[18] In *Wanberg*, we explained that division of marital assets involves a three-step procedure: the trial court must first determine what specific property is available for distribution, then the court must value this property, and, finally, it must decide how an allocation can be made most equitably.[19] In *Merrill v. Merrill*,[20] we held that the trial court must make "sufficiently detailed and explicit findings 'to give the appellate court a clear understanding of the basis of the trial court's decision, and to enable it to determine the ground on which the trial court reached its decision.' "[21] Included in these findings are a number of factors that a trial court must take into account in making property divisions.[22] And in *Edelman v. Edelman*,[23] we held that the trial court may not award the entire pension to one spouse without an accounting of the other spouse's marital portion.[24] In the present case, the superior court determined in the 1990 divorce decree that the pension was marital property to the extent that it was earned during the marriage. However, because Jackie did not request a formal accounting, the superior court did not undertake the last two steps of the procedure in the 1999 proceedings.

At the hearing on December 1, 1999, the superior court stated that it was its "fairly

16. 664 P.2d 568 (Alaska 1983).

17. AS 25.24.160(a)(4).

18. *Id.*

19. *Wanberg,* 664 P.2d at 570.

20. 368 P.2d 546 (Alaska 1962).

21. *Id.* at 548 (quoting *Irish v. United States,* 225 F.2d 3, 8 (9th Cir.1955)); *see also* Alaska R. Civ. P. 52(a) (stating "[i]n all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon. . . .").

22. In *Merrill,* 368 P.2d at 547–48 n. 4, we stated:

> It has been held that the principal factors to be considered by the trial court in determining the question of alimony or division of property as between the parties are the respective ages of the parties; their earning ability; the duration and conduct of each during the marriage; their station in life; the circumstances and necessities of each; their health and physical condition; their financial circumstances, including the time and manner of acquisition of the property in question, its value at the time and its income producing capacity if any.

23. 3 P.3d 348 (Alaska 2000).

24. *Id.* at 355–56.

vague impression" that "[Jackie] was going to end up owing [Bob]" due to the fact that the pension would be worth less than the amount "paid" by Bob in the settlement with the state that released the loans on the house. However, the superior court acknowledged that nobody had done the exact calculations, there had been no effort to reduce the pension benefits to present value to make a valid comparison, and the figures the court was using were very rough. The superior court never made any findings as to the value of the pension, nor did it apply the factors set out in *Merrill*[25] to divide the pension. And Jackie adduced considerable evidence that the rough figures Bob's attorney proposed in unsworn argument on December 1 were incorrect. Jackie is entitled to a determination on the merits and, before that determination can be made, discovery is necessary to determine the value of the pension and whether Jackie's portion is offset by the settlement of the loans secured by the house. Therefore, we remand for a hearing on the valuation and division of the pension.

## V. CONCLUSION

Because the "Advice of Counsel" filed by Jackie on December 15, 1999 was sufficient to alert the court and opposing counsel that further information was needed by Jackie to respond to the court's order to file a request for an accounting by that date, and because it was so treated by opposing counsel, the court abused its discretion in awarding the entire pension to Bob with no further notice. We REMAND this issue to the superior court for division of the marital property under *Wanberg*.

25. *Merrill,* 368 P.2d at 547–48 n. 4.