Tammi L. EDELMAN, Appellant,

v.

Duane F. EDELMAN, Appellee.

No. S–10408.

Supreme Court of Alaska.

Dec. 27, 2002.

**2**

Michael Hough, Homer, for Appellant.

Allison E. Mendel, Mendel & Associates, Anchorage, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

FABE, Chief Justice.

## I. INTRODUCTION

This appeal concerns the manner in which property was divided in a divorce proceeding and the denial of attorney's fees and costs to the former wife. Tammi Edelman challenges the trial court's refusal to compel Duane Edelman, her former spouse, to assign half of his claims from the Exxon Valdez oil spill so that the Exxon funds administrator can pay her directly. Instead of assigning half of Duane's Exxon claims to Tammi, the superior court decided to retain jurisdiction until it could determine the value of the Exxon claims. Tammi also disputes the trial court's denial of attorney's fees and costs to her. Because the trial court did not abuse its discretion in retaining jurisdiction over the Exxon claims and requiring the parties to

bear their own fees, we affirm the superior court's decision.

## II. FACTS

Duane and Tammi Edelman married in 1976. Their only child, J.E., was born in 1983. The couple separated in October 1992 and Tammi filed for divorce in June 1993. The superior court granted Tammi a decree of divorce on April 14, 1994.[1]

Duane is a seasonal fisherman and a claimant in the Exxon Valdez Oil Spill litigation. He holds two types of claims against Exxon. The first is for income lost from the Cook Inlet salmon set net fishery and from hauling Prince William Sound herring. The second is for devaluation of his salmon set net permit. The superior court awarded the lost income claims equally to Tammi and Duane.

Duane and Tammi petitioned for bankruptcy in March 1994, after they had filed for divorce but before the superior court granted the final divorce decree. Originally filed under Chapter 13, the Edelmans' bankruptcy petition was converted to Chapter 7 on October 24, 1994. Ultimately, the parties appear to have changed the bankruptcy from joint to individual, as Duane received a discharge in his name alone on February 9, 1995. Tammi did not pursue bankruptcy for herself.

## III. PROCEDURAL HISTORY

This is the second time that this case has come before us. In *Edelman v. Edelman* (*Edelman I*), we addressed the division of the marital property, alimony, and attorney's fees.[2] With regard to the marital property, we held that (1) the set net salmon fishing permit was Duane's separate property; (2) the superior court's valuation of the marital residence was clearly erroneous; (3) compensatory damages from Duane's Exxon Valdez claims which replaced lost fishing income during marriage should be classified as marital property, to be divided equally between Tammi and Duane; (4) compensatory damages from Duane's Exxon Valdez claims for devaluation of his set net permit should be

**1.** *Edelman v. Edelman,* 3 P.3d 348, 350 (Alaska 2000).

**2.** *Id.* at 350.

classified as Duane's separate property;[3] (5) the superior court erroneously awarded Duane his entire pension fund without accounting for Tammi's share of the marital portion; and (6) Tammi was not entitled to reorientation alimony.[4] We remanded to the superior court for revaluation of the marital residence, determination of whether Tammi was entitled to credit for post-separation payments she made on the marital residence's mortgage, and determination of the value of Duane's pension fund.[5] We also remanded on the issue of attorney's fees which we said "must be based primarily on the relative economic situations and earning power of the parties."[6]

On remand, the trial court affirmed its original award of the marital home to Tammi and adjusted the appraisal value of the home to $165,000. The equity in the home at the time of court's order was $73,588.22.[7] The trial court held that Tammi was not entitled to credit for post-separation mortgage payments. The court awarded the pension plan to Duane. The trial court also provided that "[a]ny recovery for lost income from Exxon should be divided equally between the parties."

Shortly after the trial court issued its memorandum decision and order on remand, Tammi filed a motion for attorney's fees and costs. She argued that Duane's greater earning capacity and comparative job security, combined with his alleged vexatious conduct in delaying the divorce proceedings, compelled an award in her favor for fees and costs. Duane argued in his opposition to Tammi's motion that Tammi could pay her own fees and that he had not engaged in vexatious conduct.

In addition to her motion for attorney's fees and costs, Tammi requested that Duane sign two Exxon assignments. The assignments authorized the Exxon Qualified Fund Administrator to pay the assigned amount to Tammi directly.[8] Duane refused to sign the assignments, claiming the documents did not comport with the trial court's decision. Tammi moved to compel Duane to execute the assignments.

The trial court denied both of Tammi's motions in its October 11, 2001 supplementary order on remand. On the attorney's fees and costs issue, the trial court held that Tammi could pay her own fees and that Duane had not engaged in vexatious conduct. With regard to the proposed assignments of the Exxon awards, the trial court decided to retain jurisdiction over the division of the Exxon claims "to monitor distribution of that asset, if and when it occurs." The court noted that the amounts may be subject to third-party claims, such as that of the bankruptcy trustee, and concluded that the as-

---

3. Because the set net fishing permit is Duane's separate property, we ruled that the permit devaluation claim is also his separate property. *Edelman*, 3 P.3d at 355. Permit devaluation accounts for seventeen percent of Duane's Upper Cook Inlet salmon set net claim. Therefore, Duane will receive seventeen percent of the Cook Inlet set net claim as separate property in the event that the claims are paid. The remaining proceeds will represent lost marital income and will be divided equally between Duane and Tammi.

4. *Edelman*, 3 P.3d at 352–58.

5. *Id.* at 354, 356.

6. *Id.* at 359.

7. The court arrived at this amount by subtracting the amount of the first and second mortgages on the home at the time of Duane and Tammi's separation, $74,026.61 and $9,750.00, and the amount of an IRS lien, $7,635.17, from the appraisal value of the marital home at the time of trial, $165,000.

8. The proposed Assignments of Proceeds read in pertinent part:

I, DUANE F. EDELMAN ... irrevocably assign[ ] ONE–HALF (1/2) all of my claims, settlement or proceeds from the Exxon Valdez Oil Spill Litigation Tender Exxon Claim to TAMMI BLUMENTRITT f/k/a TAMMI EDELMAN.... I direct the Exxon Qualified Settlement Fund administrator ... to pay the assigned sum to the assignee....

And

I, DUANE F. EDELMAN ... irrevocably assign[ ] ONE–HALF (1/2) all of my claims, settlement or proceeds from the Exxon Valdez Oil Spill Litigation Upper Cook Inlet Salmon Set Netters' Exxon Claim, except compensation for Devaluation of Limited Entry Permit, to TAMMI BLUMENTRITT f/k/a TAMMI EDELMAN.... I direct the Exxon Qualified Settlement Fund administrator ... to pay the assigned sum to the assignee....

signments were not necessary; rather, "some document providing notice of the existence of Plaintiff's interest to the fund administrator should be all that is necessary."

Tammi appeals the denial of attorney's fees and the denial of the motion to compel Duane to sign the assignments.

## IV. STANDARD OF REVIEW

We review procedural decisions of the superior court under the abuse of discretion standard.[9] We will only reverse a trial court's decision not to award attorney's fees if it was an abuse of discretion.[10]

## V. DISCUSSION

### A. The Exxon Claims

Tammi argues that the trial court abused its discretion in refusing to require Duane to execute the assignments of the Exxon awards. Her primary argument is that the trial court modified her original award of half of the Exxon lost income claims "to something significantly less" by deciding to retain jurisdiction. She argues that the bankruptcy trustee's claims against Duane may be deducted from the Exxon awards before the awards are distributed equally to Tammi and Duane, thus diminishing her share.

The only potential merit in Tammi's argument that the trial court's supplementary order on remand modified her award of fifty percent of the Exxon lost income claims "to something significantly less" comes from a perceived discrepancy between what we said in *Edelman I* and the trial court's language in its supplementary order.[11] Following our decision in *Edelman I*, the superior court stated in its decision on remand that "[a]ny recovery for lost income from Exxon should be divided equally between the parties." However, the superior court later stated in its supplementary order on remand that "[a]ny Exxon damages arising out of Mr. Edelman's Cook Inlet Set Net permit be-

long[ ] to Defendant since that set net permit is his separate property." But in *Edelman I*, we held that the set net damages reflecting the loss of marital wages are marital property.[12] This apparent discrepancy is not fatal because the set net claim is comprised of two types of damages: "(1) compensatory damages for loss of revenue in 1989–91 due to the drop in price of sockeye salmon, and (2) damages for devaluation of his set net permit."[13] We interpret the trial court's supplementary order to reflect our determination that only the damages for devaluation of the set net permit go exclusively to Duane as separate property. Tammi's share of the Exxon lost income claims continues to be fifty percent.

The superior court did not abuse its discretion by retaining jurisdiction over the Exxon claims. Both parties concede that the exact amount and time of payout of the Exxon claims are unknown. We have held that when an asset is incapable of valuation at the time of trial because of future contingencies, the trial court should retain jurisdiction over its division until valuation is possible.[14] Duane is in bankruptcy; Tammi chose not to pursue bankruptcy. Some of Duane's debts may be marital debts. Presumably, the bankruptcy trustee will not have a claim to Tammi's share of marital property to pay debts that are solely Duane's; however, that issue is for the bankruptcy court to determine. We affirm the trial court's decision to retain jurisdiction over the awards and not to compel Duane to assign Tammi's fifty percent share of the Exxon claims to her.

### B. Attorney's Fees and Costs

Tammi's second claim on appeal is that the trial court abused its discretion in denying her attorney's fees. She asked the court to award her $47,732.00 in attorney's fees and $5,209.68 in costs. The trial court denied Tammi any attorney's fees. She argues two

**9.** *Nelson–Lizardi v. Lizardi*, 49 P.3d 236, 238 (Alaska 2002).

**10.** *Davila v. Davila*, 908 P.2d 1027, 1031 (Alaska 1995).

**11.** *Edelman I*, 3 P.3d at 355.

**12.** *Id.*

**13.** *Id.*

**14.** *Root v. Root*, 851 P.2d 67, 68 (Alaska 1993).

points on appeal: that the trial court failed to base its decision on the relative economic situations and earning powers of the parties as directed by this court in *Edelman I* and that Duane engaged in vexatious conduct. Duane counters that income disparity alone is not a basis for an award of attorney's fees and points out that, as the trial court noted, Tammi received over $45,000 in spousal support, sixty percent of the marital estate, and that she has already remarried and had additional children. He also asserts that Tammi's lack of income is due to her lifestyle choice to stay home with her children.

■ The decision to award attorney's fees is within the trial court's broad discretion.[15] The trial court may award a divorcing spouse "attorney fees and costs that reasonably approximate the actual fees and costs required to prosecute or defend the action."[16] The purpose of awarding attorney's fees in divorce proceedings is to "assure that both spouses have the proper means to litigate the divorce action on a fairly equal plane."[17] The court must base its decision whether to award fees primarily on the parties' relative economic situations and earning powers.[18] However, parties who are in comparable economic situations should bear their own fees and costs.[19] Thus, even if one spouse earns less than the other, if that spouse has resources sufficient "for the superior court to reasonably expect [him or her] to pay [his or her] own fees, it is not an abuse of discretion to require [the lower wage earning spouse] to do so."[20]

■ The lower court determined that it did not "need to determine what [Tammi's] actual income earning capacity might be" because it found that Tammi "has the re-sources to pay her own attorney's fees and she was not compromised from litigating on an equal plane with [Duane] as a result of any disparity in income earning capacity." Tammi argues that the trial court thus failed to follow our specific direction to base its decision about attorney's fees on remand upon "the relative economic situations and earning powers of the parties."[21] We disagree. "Partial attorney's fees are awarded as a matter of course under Civil Rule 82 to the prevailing party. Civil Rule 82, however, does not apply to judgments in divorce cases. In such cases costs and fees are based on the 'relative economic situations and earning powers' of the parties, rather than on a prevailing party determination."[22] In essence, we instructed the lower court to apply the divorce exception to Alaska Civil Rule 82.[23] The divorce exception provides that "when the parties' economic status is generally equal, it is ordinarily error to make any award of costs or fees."[24] Tammi's resources included: $45,000 in interim support from Duane, the marital home, and the potential for additional recovery from her fifty percent share of the Exxon claims. The equity in the marital home at the time of the trial court's decision was $73,588.22. The superior court awarded Duane the marital portion of his retirement/pension fund valued at $45,000 and fifty percent of the Exxon lost income claims. Duane is in bankruptcy. Because Duane's economic situation is not significantly better than Tammi's, we hold that the trial did not abuse its discretion when it denied Tammi attorney's fees.

■ The trial court may also increase an award of attorney's fees where a party

---

15. *Nicholson v. Wolfe*, 974 P.2d 417, 427 (Alaska 1999).

16. AS 25.24.140(a)(1).

17. *Nicholson*, 974 P.2d at 427 (quoting *Kowalski v. Kowalski*, 806 P.2d 1368, 1372 (Alaska 1991)).

18. *Edelman I*, 3 P.3d at 359.

19. *Nicholson*, 974 P.2d at 427.

20. *Davila v. Davila*, 908 P.2d 1027, 1035 (Alaska 1995).

21. *Edelman I*, 3 P.3d at 359.

22. *L.L.M. v. P.M.*, 754 P.2d 262, 263–64 (Alaska 1988).

23. "The divorce judgment exception to Civil Rule 82 is based on a broad reading of AS 25.24.140(a)(1), *Burrell v. Burrell*, 537 P.2d 1, 6 (Alaska 1975), and on the reality that there usually is no prevailing party in a divorce case." *Id.* at 264.

24. *Id.*

has acted in bad faith or vexatiously.[25] The court must follow a two-step process to make an award of enhanced fees: It must determine the appropriate fee award under the general rule and then it may increase that award to account for a party's misconduct.[26] "Failure to follow this two-step process is an abuse of discretion."[27] Additionally, the court "must make explicit findings of bad faith or vexatious conduct and clearly explain its reasons for deviating from the general rule."[28] "When the court finds that one spouse's misconduct has unnecessarily increased the other spouse's costs, the court must identify the nature and amount of these increased costs."[29]

 Tammi argues that the trial court abused its discretion when it stated that "[i]t would be difficult and time consuming for this court to attempt reconstruction of the events by examination of the five volumes of pleadings in this case" to determine whether Duane acted vexatiously.[30] The superior court did not err in declining to find that Duane engaged in bad faith or vexatious conduct. A review of the record shows that Tammi made only generalized allegations in her motions for attorney's fees that Duane delayed the divorce proceedings and that his alleged delay tactics rose to the level of bad faith and vexatious conduct. The party who seeks an increased award of attorney's fees must show that the other party's vexatious or bad faith conduct prevented him or her from litigating on an equal plane.[31] Tammi has not demonstrated with sufficient specificity that Duane's actions were vexatious or in bad faith. The superior court therefore did not err in finding that Duane did not act in bad faith or engage in vexatious conduct.

## VI. CONCLUSION

Because the trial court did not abuse its discretion in retaining jurisdiction over the Exxon claims and requiring the parties to bear their own fees, we AFFIRM the superior court's decision.

---

**25.** *Kowalski v. Kowalski,* 806 P.2d 1368, 1373 (Alaska 1991).

**26.** *Id.*

**27.** *Id.*

**28.** *Id.*

**29.** *Id.*

**30.** The Edelmans' case was originally assigned to Superior Court Judge Charles K. Cranston. Upon his retirement, the case was assigned to Superior Court Judge Harold M. Brown who explained in his supplementary order:

> [T]his court has no independent recollection of the conduct of either party prior to its appointment to the bench. It would be difficult and time consuming for this court to attempt reconstruction of the events by examination of the five volumes of pleadings in this case.... [T]he conduct of the parties [since the case was assigned to Judge Brown] does not independently justify an award of [increased] attorney's fees.

**31.** *Gallant v. Gallant,* 945 P.2d 795, 803 (Alaska 1997); *see also Wright v. Wright,* 904 P.2d 403, 411 (Alaska 1995) (affirming award of enhanced fees where former husband concealed $1,337,136 in marital assets and wife spent $125,000 in attorney's and accountant's fees to track them down).