*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| BUSINESS DOE, LLC, | ) | |
| | ) | Supreme Court No. S-19049 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-24-04303 CI |
| v. | ) | |
| | ) | O P I N I O N |
| STATE OF ALASKA, | ) | |
| | ) | No. 7784 – September 5, 2025 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Laura Hartz, Judge.

Appearances: Rachel B. Lauesen, Lauesen Law Team, LLC, Anchorage, for Appellant. Laura Fox, Senior Assistant Attorney General, Anchorage, and Treg Taylor, Attorney General, Juneau, for Appellee.

Before: Carney, Chief Justice, and Borghesan, Henderson, and Pate, Justices.

CARNEY, Chief Justice.

## I.     INTRODUCTION

A business appeals the denial of its petition to quash a subpoena to produce business records. The subpoena was issued by the consumer protection division of the attorney general's office in connection with its investigation into reported unfair and deceptive business practices. Because there was cause to issue the subpoena, it was authorized by AS 45.50.495(b). The subpoena also specified the

particular documents to be produced, as required by the same law. The superior court did not abuse its discretion by denying the petition to quash the subpoena and we affirm its order.

## II. FACTS AND PROCEEDINGS

### A. Facts

The Consumer Protection Unit (CPU) of the Attorney General's Office investigates unfair and deceptive trade practices and files legal actions on behalf of the State of Alaska under the Unfair Trade Practices and Consumer Protection Act (UTPA).[1] In August 2023 the CPU received an anonymous letter alleging that two local car dealerships, one of which was Business Doe,[2] were charging documentation fees on top of advertised prices in violation of AS 45.25.440.[3] Attached to the letter was an email exchange between a sender using an address listing "@[businessdoe.com]" and another individual, confirming that Business Doe charged dealer documentation fees on top of its advertised prices.

Joshua Smith, a CPU investigator, requested to open an investigation regarding the complaint in the letter. The chief of the Special Litigation Section in the Department of Law approved his request. CPU attorneys John Haley and Ian Engelbeck were copied on the request and approval.

Although the investigation was approved in August, CPU staff did not act on it until October. A paralegal periodically took video screenshots of advertisements on Business Doe's website.

---

[1] AS 45.50.471-.561 (declaring "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce" unlawful and authorizing attorney general power to investigate).

[2] We use a pseudonym for the business.

[3] Alaska Statute 45.25.440 requires vehicle dealers to include "all dealer fees and costs" in their advertised prices.

At the end of November Smith went to Business Doe during the lunch hour posing as a potential customer. He first visited a location he believed was its place of business. He spoke to a Business Doe employee who told him that the main place of business was across the street. Smith recorded the conversation and asked the employee if vehicle prices were their actual prices or if there would be an additional documentation fee. The employee responded that there would be an additional documentation fee.

Smith then went to Business Doe's main vehicle lot. Still recording, he asked a second employee there, "How hard are you guys on your prices?" The employee responded that Business Doe might negotiate reasonable offers and that in addition to any negotiated price there would be "a doc[ument] and DMV fee."

In December the CPU issued a subpoena under AS 45.50.495(b) to Business Doe.[4] The subpoena stated, "The Attorney General has reason to believe that [Business Doe] may have violated Alaska Statute 45.25.440 by charging dealer fees or costs that were not included in advertised prices. The Attorney General is conducting a confidential investigation into the matter." The subpoena directed Business Doe to provide copies of documents for all vehicles sold between October 12, 2023, and November 30, 2023. The subpoena specifically listed sales contracts, Monroney[5] and dealer window stickers, and all advertisements for all vehicles sold. The subpoena set an early January deadline to provide the documents.

---

[4] The CPU issued a nearly identical subpoena later in December because the first had been delivered to a relative of Business Doe's registered agent rather than the agent. The second subpoena was signed by an assistant attorney general; the earlier one was signed by Smith.

[5] Monroney stickers are uniform labels required by federal law that display information for consumers, including the final price by the vehicle manufacturer. *See* AS 45.25.400(b)(1).

In late December Business Doe's attorney contacted Engelbeck to find out why it had received a subpoena and to object to Smith's undercover activity. Business Doe later asserted that Engelbeck told its lawyer that the subpoena was not based upon a complaint but was issued because the attorney general "has an interest in the industry in general as you can see from [a recent similar case]."

In early January 2024 Business Doe "demanded" that the CPU withdraw its subpoena, arguing that "an interest in the industry in general" was not sufficient to authorize an investigation into its business practices and that the subpoena was not valid. Business Doe requested instead that the CPU consult with it regarding compliance with AS 45.25.440 and asked that the CPU agree not to take further investigative or enforcement action. The CPU declined.

## B. Proceedings

After the January deadline to provide documents passed, Business Doe filed a petition in superior court to quash the subpoena. It argued that the CPU must have "cause to believe" that a violation of AS 45.50.471[6] has occurred or will occur before it can authorize an investigation under AS 45.50.495.[7] Business Doe claimed that AS 45.50.495(a) and (b) must be read as: " '[*i*]*f* the Attorney General has cause to believe . . . ' the AG may investigate." It argued that the two statutory sections had to be interpreted together so that the attorney general must have "cause to believe" a business engaged in, was engaging in, or was going to "commit a violation of consumer protection laws before it has any power to investigate since the information acquired could be used for criminal proceedings."

---

[6] *See* AS 45.50.471 (declaring deceptive trade practices unlawful and defining "unfair methods of competition" and "unfair or deceptive acts or practices").

[7] *See* AS 45.50.495 (authorizing attorney general to request documents and property for examination and authorizing issuance of subpoenas to witnesses or for physical evidence "to aid an investigation or inquiry").

Business Doe, relying on a comment in legislative committee minutes, asserted that the statute "[g]rant[ed] investigative powers to the Attorney General to obtain books and records on short notice when there is *probable cause to believe* that fraud has been committed."[8] Business Doe argued, based upon its December conversation with Engelbeck, that the CPU did not have "cause to believe" Business Doe was committing unfair or deceptive acts because Engelbeck did not know about the complaint letter. Citing AS 44.17.010 and AS 44.17.040, Business Doe also argued that the investigation was unauthorized because "[t]here was . . . no supervision, direction, and control of Investigator Smith" as was required by Alaska Rule of Professional Conduct 5.3.[9]

In addition, Business Doe contended that the anonymous complaint letter could not establish "cause to believe." It argued that the letter lacked any indicia of reliability and alleged that it had been written by CPU staff.

Business Doe also argued that the undercover investigation did not establish the requisite "cause to believe." It asserted that undercover investigations were not included in the list of the attorney general's investigatory powers and therefore the CPU was acting outside the scope of its authority.[10]

The CPU opposed the petition to quash the subpoena, arguing that it had authority to issue the subpoena and none of Business Doe's arguments undermined its authority. It asserted that the subpoena was an administrative subpoena, which "is

---

[8]    *See* Minutes, S. Judiciary Comm. Hearing on C.S.H.B. 543, 8th Leg., 2d Sess. (Apr. 16, 1974) (testimony of Attorney General Norman Gorsuch).

[9]    *See* AS 44.17.010 (authorizing principal executive officer of each state department to delegate functions to subordinate officers and employees); AS 44.17.040 (authorizing principal executive officer to appoint, supervise, and direct subordinate department staff); Alaska R. Prof. Conduct 5.3 (lawyers' supervisory responsibilities regarding nonlawyer assistance).

[10]    *See* AS 45.50.495.

similar, but not identical to a subpoena *duces tecum*,"[11] and that as a result, the court's oversight was limited to whether the subpoena was overbroad or sought irrelevant material.[12] The CPU argued that its subpoena was lawful under AS 45.50.495(b) because it was reasonably designed to aid a good-faith investigation and would aid the investigation or inquiry. The CPU asserted it was conducting a good-faith investigation because the letter and email attachment were sufficient to provide a good-faith basis to investigate under the low standard required for an administrative subpoena.[13] It argued that the letter and email attachment alone were sufficient even before it monitored Business Doe's website or visited its business. The CPU stressed that the subpoena was reasonably designed to aid its investigation of Business Doe's practices and that the documents requested were in furtherance of its evaluation of whether Business Doe was conducting deceptive trade practices.

Finally, the CPU noted that Business Doe had not provided any evidence that the letter and email attachment were not authentic. And it denied Business Doe's claim that Smith was "unsupervised," noting that the chief assistant attorney general had given written approval of the Business Doe investigation. The CPU argued that undercover investigations were especially necessary for consumer protection because consumers were often unaware of UTPA violations and would find it difficult to identify violations by themselves.

---

[11]     A subpoena *duces tecum* is a request for the production of documentary evidence and is governed by Alaska Rule of Civil Procedure 45(b). *See Tesoro Petroleum Corp. v. State*, 42 P.3d 531, 540 (Alaska 2002).

[12]     *See id.* at 541 (requiring administrative subpoenas to be "issued pursuant to lawful authority," "relevant to the inquiry for which it is issued," and to "contain[] adequate specification of the documents to be produced" (quoting *Matanuska Maid, Inc. v. State*, 620 P.2d 182, 189 (Alaska 1980))).

[13]     *See id.*

The superior court denied Business Doe's petition to quash the subpoena. After finding Business Doe had waived any objection to service by filing the petition,[14] it held that the subpoena was authorized under AS 45.50.495(b) and that Business Doe had not demonstrated the subpoena was irrelevant to the inquiry for which it was issued or that it did not adequately specify the documents to be produced.[15] The court found that the subpoena was part of a good-faith investigation into potential UTPA violations and that no warrant was necessary for Smith to visit Business Doe's property because it was open to the public. The court determined that the "cause to believe" standard in AS 45.50.495(a) did not apply to the powers listed in AS 45.50.495(b). And it agreed with the CPU that even if the "cause to believe" standard applied, the subpoena should not be quashed. The court concluded that the letter and email attachment were enough to meet this "low bar" and that they were sufficient to find cause to believe that Business Doe had engaged in deceptive trade practices under the UTPA. The court found that the subpoena was reasonably designed[16] to aid the CPU's investigation and that the State had "a legitimate interest in investigating violations in consumer protections laws."

Business Doe appeals.

## III. STANDARD OF REVIEW

We review discovery orders, including the denial of a petition to quash a subpoena, under the deferential abuse of discretion standard,[17] and will reverse the superior court's decision "only when, after reviewing the whole record, we are left with

---

[14]    The subpoena was not properly served on Business Doe.

[15]    *See Tesoro Petroleum Corp.*, 42 P.3d at 541 (quoting *Matanuska Maid*, 620 P.2d at 189).

[16]    *See* AS 45.50.495(b).

[17]    *See Lee v. State*, 141 P.3d 342, 346 (Alaska 2006) (citing *Coulson v. Marsh & McLennan, Inc.*, 973 P.2d 1142, 1146 (Alaska 1999)).

a definite and firm conviction that the superior court erred. But we apply our independent judgment in deciding the legal question whether the superior court weighed the appropriate factors in issuing a discovery order."[18]

## IV. DISCUSSION

The parties disagree whether the attorney general is required to have "cause to believe" a violation of the UTPA has occurred under AS 45.50.495(a) before it may issue a subpoena for records under AS 45.50.495(b). We need not decide that question in this case because we conclude that, regardless of whether the statute requires it, there was sufficient "cause" for the subpoena in this case.

Under subsection (a) of the statute, if the attorney general "has cause to believe that a person has engaged in, is engaging in, or is about to engage in a deceptive trade practice," the attorney general may act.[19] The attorney general may request certain statements filed under oath, examine a person under oath, examine property, books and documents, and may also impound samples of property.[20] Subsection (b) describes the attorney general's subpoena power.[21] For example, the attorney general may issue a subpoena to witnesses or for the production of physical evidence.[22] The "cause to believe" language that is included in subsection (a) is not present in subsection (b).[23]

---

[18] *Id.* at 347 (footnote omitted) (citing *Nelson-Lizardi v. Lizardi*, 49 P.3d 236, 239 (Alaska 2002)).

[19] AS 45.50.495(a); *see also* AS 45.50.471(a) (prohibiting deceptive trade practices).

[20] AS 45.50.495(a)(1)-(5).

[21] AS 45.50.495(b) ("The attorney general . . . may issue subpoenas to require the attendance of witnesses or the production of documents or other physical evidence, administer oaths, and conduct hearings to aid an investigation or inquiry.").

[22] *Id.*

[23] *See id.*

Business Doe nonetheless argues that the "cause to believe" standard in subsection (a) applies to subsection (b), and that the CPU must have "cause to believe" that a deceptive trade practice has occurred, is occurring, or will occur before it can issue a subpoena. Business Doe asserts that because subsection (b) refers to subsection (a) by stating "in addition to other powers conferred by this section" the two parts of the statute must be interpreted as a single, harmonious unit.[24] It further asserts that not requiring a "cause to believe" standard to issue a subpoena while requiring it before documents can be examined or copied "would lead to an absurd result," because the point of a subpoena is to require production of records specifically so they can be examined.[25]

It is not necessary for us to decide whether subsection (b) incorporates the "cause to believe" standard from AS 45.50.495(a). Whether the standard applies or not, the anonymous letter that the CPU received provided sufficient basis under AS 45.50.495(b) to authorize the CPU to issue a subpoena. The letter itself accused Business Doe of charging dealer documentation fees in addition to its advertised prices. The attached email correspondence between an apparent employee of Business Doe and an inquiring consumer provided additional support for the letter's accusations. Although Business Doe suggests that the letter was submitted by someone within the CPU itself, it produced no evidence to support its claim. The letter's specificity and the reasonable inferences to be drawn from it provide sufficient indicia of reliability to further support the CPU's authority to issue the subpoena.

Business Doe expresses concern that the CPU's interpretation of the statute as requiring less than probable cause will give it undue power to investigate. Business Doe cites the comment in the legislative history to argue that the CPU needs

---

[24] *See id.*

[25] Business Doe also argues that Investigator Smith was unsupervised, but the record shows that Smith received written approval to open the investigation.

probable cause to investigate and refers us to other state courts' interpretation of their statutes. And it suggests that because other states have required "cause to believe" to issue a subpoena or begin a consumer protection investigation, Alaska's legislature must also have intended that it be required.[26] But because the legislature did not require that the "cause" required by AS 45.50.495(a) be "probable cause" or "good cause", we will not write that language into the statute.

The legislative committee's reference to probable cause[27] was not included in the statute that was enacted.[28] And the statutes that our sister courts have interpreted to require good cause to issue administrative subpoenas are worded differently than AS 45.50.495. Those statutes include specific language requiring

---

[26] Business Doe complains that allowing the CPU to investigate without requiring it to have good cause will violate its right against self-incrimination. But the subpoena itself stated "[i]f you believe a document requested in this Subpoena may implicate you in a crime, you may exercise your Fifth Amendment right not to be compelled in a criminal case to be a witness against yourself."

[27] *See* Minutes, S. Judiciary Comm. Hearing on C.S.H.B. 543, 8th Leg., 2d Sess. (Apr. 16, 1974) (testimony of Attorney General Norman Gorsuch).

[28] *See* AS 45.50.495; *see also State, Dep't of Educ. & Early Dev. v. Alexander*, 566 P.3d 268, 284 (Alaska 2025) ("[L]egislative history usually does not override the plain terms of a statute.").

reasonable cause.[29]  Other state courts' interpretations of statutes that use language such as "reasonable cause" or "good cause" therefore do not provide definitive guidance.[30]

Business Doe compares this case to a Kentucky one in which an appeals court quashed an administrative subpoena relating to a defective product investigation.[31]  In that case the court held that a letter with attachments alleging a defective product was not sufficient "reason to believe" that the state's consumer protection law had been violated.[32]  The Kentucky court relied on the absence of complaints from customers or "affidavits of anyone who tested appellants' product and

---

[29]  *See, e.g.*, Ariz. Rev. Stat. Ann. § 44-1524(A) ("If the attorney general has reasonable cause to believe that a person has engaged in, is engaging in or is about to engage in any practice or transaction which is in violation of this article . . . he may . . . [r]equire such person to file on such forms as he prescribes a statement or report in writing, under oath, as to all the facts and circumstances concerning the sale . . . [e]xamine under oath any person in connection with the sale . . . [and] [e]xamine any merchandise or sample thereof, or any record, book, document, account or paper as he may deem necessary."); Colo. Rev. Stat. Ann. § 6-1-108(1) ("When the attorney general . . . has reasonable cause to believe that a person . . . has engaged in or is engaging in a deceptive trade practice . . . the attorney general . . . may issue subpoenas to require the attendance of witnesses or the production of documents, administer oaths, conduct hearings in aid of any investigation or inquiry."); S.D. Codified Laws § 37-1-11.1 ("If the attorney general has reasonable cause to believe that a person has information or is in possession, custody, or control of any document or other tangible object relevant to an investigation for violation of this chapter, he may serve upon the person . . . a written demand to appear and be examined under oath, to answer written interrogatories under oath, and to produce the document or object for inspection and copying."); Vt. Stat. Ann. tit. 9, § 2460(a)(1) ("The Attorney General . . . whenever he or she has reason to believe any person to be . . . in violation of . . . this title . . . may examine . . . any books, records, papers, memoranda, and physical objects . . . and may demand written responses under oath to questions bearing upon each alleged violation.").

[30]  *See, e.g.*, *id.*

[31]  *Ward v. Commonwealth ex rel. Stephens*, 566 S.W.2d 426 (Ky. App. 1978).

[32]  *Id.* at 428-29.

found it defective" to conclude that the investigating agency lacked reason to believe the product was defective.[33]

In contrast, the CPU investigated Business Doe for an unfair trade practice — charging additional documentation fees in addition to its advertised prices — under AS 45.50.471. The anonymous letter included an email from an apparent employee of Business Doe engaging in precisely that unfair trade practice: confirming that Business Doe was charging dealer documentation fees on top of its advertised prices. The anonymous letter itself appears to be a consumer complaint. Attached to it was apparent proof of the unfair trade practice identified in the letter. The superior court did not abuse its discretion by concluding that the letter provided a sufficient basis for the CPU to open an investigation into Business Doe's practice.[34]

## V.   CONCLUSION

We AFFIRM the superior court's order.

---

[33]   *Id.* at 428.

[34]   Business Doe also argues the superior court erred by failing to conduct an evidentiary hearing to determine whether the anonymous complaint letter provided reasonable grounds for an investigation. But there was no evidence of inauthenticity which would warrant such a proceeding.