COMMONWEALTH of Kentucky ex rel.
Ed W. HANCOCK, Attorney-General,
Appellant,

v.

Louis PINEUR, Appellee.

Supreme Court of Kentucky.

Feb. 6, 1976.

Ed Hancock, Atty. Gen., pro se.

Mortimer Jeremiah Stamm, Asst. Atty. Gen., Consumer Protection Div., Frankfort, for appellant.

John D. Sword, Sword & Floyd, Richmond, for appellee.

PALMORE, Justice.

The judgment from which the Attorney-General brings this appeal granted to the appellee, Louis Pineur, protective relief against compliance with an "Investigative Demand" (hereinafter called the demand) issued by the Division of Consumer Protection. See KRS 367.120, 367.240 and 367.260.

The demand was directed to Pineur not as an individual but in his capacity as an officer or agent of four affiliated corporations engaged in the selling of mobile homes in this state. It was served in February of 1975, and called for the production of a great deal of information as to each of the four corporations, including, for example, copies of promotional material used since June 16, 1972; names, addresses and telephone numbers of all sales personnel, transporters, repairmen and other representatives; names, addresses and telephone numbers of all Kentucky purchasers of their mobile homes since July 1, 1973; an explanation of all warranties and service agreements used since July 1, 1973; copies of all complaints and repair requests received from customers since July 1, 1973; and copies of all correspondence received from Kentucky consumers since July 1, 1973. In addition to this documentary information, which was directed to be provided at the Madison County Court House at 1:00 P.M. on February 25, 1975, the demand specified that there be made available for questioning at the same time and place a representative or representatives of the corporations familiar with all their sales, repair and delivery aspects.

Shortly after receipt of the demand Pineur applied to the Madison Circuit Court for relief. Cf. KRS 367.260. He asked that the demand be set aside as unreasonable, arbitrary and capricious and that the Attorney-General be enjoined from contacting his customers (meaning, presumably, customers of the four corporations) unless and until a showing of proper justification be made to the court. The complaint stated numerous factual grounds on which it alleged the demand to be unreasonable.

In his answer the Attorney-General pleaded, among other things, that the complaint did not state grounds for relief and denied most of its material factual allega-

tions. By counterclaim he alleged that consumer-complaint letters filed with his Division of Consumer Protection pursuant to KRS 367.150(6) established reason on his part to believe that it would be in the public interest for an investigation to be made to ascertain whether the four corporations had engaged or were about to engage in acts or practices made unlawful by KRS 367.110 to 367.300, and specifically by KRS 367.170, which prohibits "false, misleading, or deceptive acts or practices in the conduct of any trade or commerce." The counterclaim concluded with a demand that Pineur be enjoined to comply with the investigative demand. Cf. KRS 367.290.

In support of a subsequent motion for summary judgment the Attorney-General listed complaints received from 38 customers of the various corporations in question and filed the affidavits of several disgruntled customers and one former salesman.

The judgment from which this appeal is taken was entered on the pleadings and motions. It is bottomed on the premise that an investigative demand authorized by KRS 367.240 must on its face give notice to the recipient "of the charge leveled against him or the claim made against him before he is required to answer. Certainly, if no charge or claim is made against him, that is, if the Attorney General does not entertain a reasonable belief upon which the 'Investigative Demand' is predicated, the Demand should not have been issued. The Demand should show on its face these minimal requirements. It does not . . . . There is . . . no method either by pleading or by operation of law where the allegations of a supporting affidavit in a Motion for Summary Judgment could be made or considered a part of the original Investigative Demand."

As stated by the appellee, the question is (emphasis added): "Whether the Attorney-General in issuing an investigative demand pursuant to KRS 367.240(1) is required to

make a showing *on the face of such demand* of the reasonable grounds for its issuance *so that the courts are not denied their power of judicial review* and to meet the requirements of due process and fundamental fairness."

That being the issue adjudicated, and the only question before this court, we do not reach the advisory portion of the judgment in which the trial court indicated its opinion that the demand was overly broad. Our determination is limited to whether there is either a statutory or constitutional requirement that a demand authorized by KRS 367.240 recite on its face the reason or grounds for its issuance, and the answer is no.

KRS 367.240(1) authorizes the Attorney-General to execute and cause an investigative demand to be served in either one of two instances, as follows:

(a) When he "has reason to believe that a person[1] has engaged in, is engaged in, or is about to engage in any act or practice declared to be unlawful by KRS 367.110 to 367.300," or

(b) When "he believes it to be in the public interest that an investigation should be made to ascertain whether a person in fact has engaged in, is engaging in or is about to engage in, any act or practice" made unlawful by the aforementioned statutes.

Whereas, however, the statute predicates the issuance of a demand on one of these two conditions precedent, nowhere does it say or imply that the condition must be recited on the face of the demand. And there is even less, if possible, to suggest a further requirement that factual details be so provided in order that it may be determined upon the face of the demand that the grounds upon which the Attorney-General has acted are in fact reasonable.

The constitutional requirements applicable to this kind of an investigatory process

1. Whether and the extent to which constitutional protections may differ as between natural persons and corporations is not within the scope of this opinion, which involves the appellee only in his capacity as an officer or agent of the four corporations.

are less stringent than those provided by KRS 367.240. Fortunately for the courts that are called upon today to resolve matters concerning implementation of the investigative powers of administrative agencies, the opinion of yesteryear written in *United States v. Morton Salt Co.,* 338 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401 (1950), by one of the great "country-lawyer" judges of all time, the late Mr. Justice Robert Jackson,[2] has weathered the passing seasons as a living bible on the subject. In a word, "On these . . . commandments hang all the Law and the Prophets." [3] Some of them, most applicable to this case, are as follows:

"The only power that is involved here is the power to get information from those who best can give it and who are most interested in not doing so. Because judicial power is reluctant if not unable to summon evidence until it is shown to be relevant to issues in litigation, it does not follow that an administrative agency charged with seeing that the laws are enforced may not have and exercise powers of original inquiry. It has a power of inquisition, if one chooses to call it that, which is not derived from the judicial function. It is more analogous to the Grand Jury, which does not depend on a case or controversy for power to get evidence but can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not. When investigative and accusatory duties are delegated by statute to an administrative body, it, too, may take steps to inform itself as to whether there is probable violation of the law." 338 U.S. at pp. 642–643, 70 S.Ct. at p. 364.

"Even if one were to regard the request for information in this case as caused by nothing more than official curiosity, nevertheless law-enforcing agencies have a legitimate right to satisfy themselves that corporate behavior is consistent with the law and the public interest.

"Of course a governmental investigation into corporate matters may be of such a sweeping nature and so unrelated to the matter properly under inquiry as to exceed the investigatory power. But is sufficient if the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant." 338 U.S. at p. 652, 70 S.Ct. at p. 369.

"Before the courts will hold an order seeking information reports to be arbitrarily excessive, they may expect the supplicant to have made reasonable efforts before the Commission itself to obtain reasonable conditions. . . . However, we are not prepared to say that courts would be powerless if after an effort to clarify or modify such an order it still is considered to be so arbitrary as to be unlawful . . ." 338 U.S. at pp. 653–654, 70 S.Ct. at p. 369.

"To protect against mistaken or arbitrary orders, judicial review is provided." 338 U.S. at p. 640, 70 S.Ct. at p. 363.

That the General Assembly in enacting the Consumer Protection Act [4] did not intend to confine an inquiry into the reasonableness of an investigative demand issued pursuant to KRS 367.240 to what is shown on its face is suggested by the inclusion of KRS 367.260, as follows:

**2.** For those who have a reverence for the law it seems fitting to pause here, and we see no reason why we should not, to observe that Mr. Justice Jackson's stature, though certainly not unrecognized in his time, has continued to grow. The clearheaded common sense, the gift for expressing it with a simplicity that was nothing less than eloquent (which surely was attributable in some degree to his years of practice in a county-seat town), and the willingness to share his enlightenment with his fellow-law-

yers, made him one of the great preceptors of the profession. More of his contributions to the American Bar Association Journal were nominated for inclusion in the *Lawyer's Treasury* (Bobbs-Merrill, 1950) than those of any other contributor. See foreword to his "The County-Seat Lawyer," id., p. 50 (reprinted from 36 ABAJ 497).

**3.** Cf. Book of Common Prayer, p. 69.

**4.** Ch. 4, Acts of 1972.

"Any person may apply to a circuit court for an appropriate order to protect such person from any unreasonable investigation action taken pursuant to KRS 367.110 to 367.300."

This statutory provision for relief is analogous to the unwritten right of access to the courts possessed by any person who has no other remedy and claims to be the victim of unconstitutionally arbitrary action at the hands of a governmental agency. Cf. *Pritchett v. Marshall,* Ky., 375 S.W.2d 253, 257 (1964). Thus it is incorrect to say, as it is put in Pineur's statement of the question here presented, that a showing of good grounds on the face of the investigative demand is required in order "that the courts are not denied their power of judicial view and to meet the requirements of due process and fundamental fairness." Nothing in this procedure denies an aggrieved party access to a court of law before he is deprived of anything. And, as in any other case in which a plaintiff has been or is about to be injured in his person or property, once he makes a prima facie showing of facts entitling him to relief the defendant agency has the onus of coming forward with a showing of reasonable justification, else it runs the risk of an adverse judgment.

In this case the record as a matter of law supports the Attorney-General's authority under KRS 367.240 to enforce production of some of the information specified in its demand. Whether it would be unreasonable to require production of all of it is an issue of fact not finally determined by the judgment, and we do not pass on that question.

The judgment is reversed and the cause remanded for further proceedings consistent with this opinion.

All concur.