DOLOMITE ENERGY, LLC; Jerry P. Finzell; and Dave Hall, Appellants,

v.

COMMONWEALTH OF KENTUCKY OFFICE OF FINANCIAL INSTITUTIONS, Division of Securities, Appellee.

No. 2007–CA–001398–MR.

Court of Appeals of Kentucky.

Sept. 5, 2008.

Ordered Published Nov. 14, 2008.

Jeffrey W. Jones, Lexington, KY, for appellant.

William B. Owsley, Frankfort, KY, for appellee.

Before NICKELL and THOMPSON, Judges; ROSENBLUM,[1] Special Judge.

## OPINION

ROSENBLUM, Special Judge.

Dolomite Energy, LLC (Dolomite), Jerry Finzell, and Dave Hall appeal from a Franklin Circuit Court order requiring them to comply with a subpoena duces tecum issued by the Commonwealth of

---

**1.** Retired Judge Paul W. Rosenblum presiding as Special Judge by assignment of the Chief

Justice pursuant to Section 110(5)(b) of the Kentucky Constitution.

Kentucky Office of Financial Institutions, Division of Securities (Commonwealth). Dolomite, Fenzell, and Hall claim that the Circuit Court erred in its decision because Dolomite does not solicit or sell to Kentucky residents, and therefore is not within the subpoena powers of the Commonwealth. We disagree and affirm the order of the Franklin Circuit Court.

Dolomite is a limited liability company located in Lexington, Kentucky, that conducts oil and gas explorations in Kentucky and Tennessee. Dolomite sold interests in those explorations to investors. The Commonwealth filed an administrative complaint against Dolomite. On May 2, 2003, the Commonwealth and Dolomite, Fenzell, and Hall entered into a settlement agreement resolving the administrative complaint. On November 14, 2006, the Commonwealth was notified by an investor that Dolomite had violated the terms of the 2003 settlement. The Commonwealth opened an investigation to further explore the allegation.

During the investigation, the Commonwealth issued a subpoena to Dolomite on November 21, 2006 by certified mail. The subpoena requested that Dolomite provide a broad list of records, memorandum, contracts, receipts, permits, invoices, bills, accounts, statements, and other information pertaining to the company. After Dolomite failed to comply with the subpoena, a petition to enforce the subpoena was filed in the Franklin Circuit Court.

At a hearing on the Commonwealth's petition, the Franklin Circuit Court granted the Commonwealth's motion for enforcement of the subpoena. The order was entered June 13, 2007. Following the court's order of enforcement, Dolomite, Fenzell, and Hall filed a motion to alter, vacate, or amend the court's order. The Circuit Court denied the motion in an order entered July 5, 2007. This appeal follows.

Dolomite, Fenzell, and Hall claim that the Commonwealth's investigative subpoena exceeded its power of authority and is thus void. They claim that the Commonwealth only has subpoena power over Kentucky companies that solicit or sell to Kentucky residents. Dolomite, Fenzell, and Hall claim that the investigatory powers of the Commonwealth only extend to Dolomite if the Commonwealth can prove that the company solicited or sold to Kentucky investors. We disagree.

 To provide protection for investors, many states have adopted the Uniform Securities Act. Kentucky adopted the Act in 1961 and codified it in KRS[2] Chapter 292. The purposes of Chapter 292 are set out in KRS 292.530(1)(a)(b)(c).[3] It is thus clear that the purposes of KRS Chapter 292 are not limited to the protection of Kentucky investors.

---

2. Kentucky Revised Statutes.

3. KRS 292.530. Purpose of Chapter.
 (1) The purpose of this chapter is to:
 (a) [p]rotect Kentucky investors by preventing investment fraud and related illegal conduct or, if this fraud or illegal conduct has already occurred, remedying, where possible, the harm done to Kentucky investors through active implementation and application of this chapter's enforcement powers;

(b) [e]ducate the investing public as to the best methods for making informed investment choices; and
(c) [a]ssist companies in their legitimate attempts to raise capital and transact in securities in Kentucky. (2) In addition, this chapter shall be so construed as to effectuate its general purpose to make uniform the law of those states which enact it and to coordinate the interpretation and administration of this chapter with the related federal regulation.

Under KRS 292.313(1), (2), (3), and (4),[4] the Blue Sky laws are applicable whether or not the investor is a Kentucky resident when buying securities from Kentucky companies.

Kentucky's commitment to protect the reputation of the Kentucky marketplace is evidenced by KRS 292.320, which prohibits certain fraudulent practices in connection with the offer, sale, or purchase of any security in Kentucky. Specifically, this subsection of the securities act forbids Kentucky companies from conducting any business practice which would operate as a fraud or deceit upon any person. KRS 292.320(1).

Under Kentucky law, the Commonwealth bears the responsibility of supervising the sale, purchase, or the offer to sell or purchase securities in the Commonwealth. KRS 292.500. As a part of its supervisory responsibility, the Commonwealth also has broad authority to investigate potential violations of the Kentucky Securities Act. KRS 292.460. Under KRS 292.460(2), the Commonwealth has the power to "administer oath and affirmations, subpoena witnesses, compel their attendance, take evidence, and require the production of any books, papers, correspondence, memoranda, agreements, or other documents or records which the ex-ecutive director deems relevant or material to the inquiry." The Blue Sky Laws provide such broad investigatory powers that the Commonwealth is given the responsibility to thoroughly investigate " . . . . whether any person has violated or is about to violate . . . ." the securities laws. KRS 292.460(1)(a).

In *Commonwealth ex rel Hancock v. Pineur*, 533 S.W.2d 527 (Ky., 1976), the Court, citing *United States v. Morton Salt Company*, 338 U.S. 632, 652, 70 S.Ct. 357, 94 L.Ed. 401 (1950), stated

> Even if one were to regard the request for information in this case as caused by nothing more than official curiosity, nevertheless law-enforcing agencies have a legitimate right to satisfy themselves that corporate behavior is consistent with the law and the public interest . . . [It] is sufficient if the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant.

Although the Commonwealth's subpoena was broad and requested an extensive list of documents, under Kentucky's Blue Sky Laws, the Commonwealth has the power to request such extensive lists when the inquiry is within the authority of the agency, the demand is not too indefinite, and the information sought is reason-

---

4. KRS 292.313(1), (2), (3) and (4).

(1) KRS 292.320(1), 292.330(1), 292.340, 292.450, and 292.480 apply to persons who sell or offer to sell when an offer to sell is made in this state, or an offer to buy is made and accepted in this state;

(2) KRS 292.320(1), 292.330(1), and 292.450 apply to persons who buy or offer to buy when an offer to buy is made in this state, or an offer to sell is made and accepted in this state;

(3) For the purpose of this section, an offer to sell or to buy is made in this state, whether or not either party is then present in this state, when the offer originates from this state or is directed by the offeror to this state and re-ceived at the place to which it is directed (or at any post office in this state in the case of a mailed offer);4) For the purpose of this section, an offer to buy or to sell is accepted in this state when acceptance is communicated to the offeror in this state and has not previously been communicated to the offeror, orally or in writing, outside this state; and acceptance is communicated to the offeror in this state, whether or not either party is then present in this state, when the offeree directs it to the offeror in this state reasonably believing the offeror to be in this state and it is received at the place to which it is directed (or at any post office in this state in the case of a mailed acceptance).

ably relevant. The broad powers granted to the Commonwealth not only protect Kentucky investors but also serve to preserve the reputation of legitimate Kentucky companies and maintain national and international confidence in the Kentucky market.

Many courts have described states' dual interests in the enforcement of the Blue Sky Laws. The United States 3rd Circuit Court of Appeals described the dual state interests underlying Blue Sky Laws by stating:

> In particular, we consider two legitimate state interests to be particularly strong ones. First, preventing New Jersey Companies from offering suspect securities to out-of-state buyers helps preserve the reputation of New Jersey's legitimate securities issuers. States that have failed to monitor out-of-state sales by in-state broker-dealers have suffered in the past, as their legitimate broker-dealers suffered from association with suspect firms offering questionable securities. .... see also Stevens v. Wrigley Pharma. Co., 154 A. 403 (N.J. Ch. Div.1931)(noting that New Jersey's interest in regulating in-state offers to out-of-state buyers is "not so much to protect the citizens of other states, as to prevent this state from being used as a base of operations for crooks marauding outside the state."); Simms Inv. Co. v. E.F. Hutton & Co., 699 F.Supp. 543, 545 (M.D.N.C.1988)("[T]he laws protect legitimate resident issuers by exposing illegitimate resident issuers.") Although this state interest is heightened when the state can prove that the in-state firm has engaged in outright fraud, the interest is nonetheless legitimate when the state seeks to block the sales of securities that it believes might be associated with dubious or manipulative sales practices.

A.S. Goldmen & Co., Inc. v. New Jersey Bureau of Securities, 163 F.3d 780, 787–88 (3rd Cir.1999).

■ Relying on Ward v. Commonwealth ex rel. Stephens, 566 S.W.2d 426 (Ky.App., 1978), Dolomite, Fenzel, and Hall also claim that the Circuit Court erred in its function as a gatekeeper to protect against arbitrary investigative demands by failing to question the Commonwealth about its basis for the subpoena. Although the investigatory powers of the Commonwealth are very broad, we recognize the important role courts play as gatekeepers in order to protect against unreasonable demands. While the trial court must satisfy itself as to the basis for the subpoena, the record reflects that the Commonwealth provided the trial court with ample evidence supporting its petition. (TR, pgs.8–14). The Commonwealth submitted the 2003 settlement agreement and the 2006 investor complaint form, along with a detailed summary of the investor's allegations against Dolomite. Therefore, the Circuit Court had sufficient evidence to determine that the investigatory subpoena was a legitimate request.

■ Dolomite, Fenzell, and Hall further argue that the court's inquiry should have concerned whether the subpoena related to Kentucky investors and whether any complaints from Kentucky investors had been received by the Commonwealth. However, we do not find the residency of the investor to be controlling. Kentucky's adoption of the Blue Sky Laws clearly shows an intent to protect not only Kentucky investors but also to protect the reputation of the Kentucky marketplace by regulating the sale of securities to both Kentucky investors and non-resident investors.

■ Dolomite, Fenzell, and Hall also claim that Hall was not properly served

with the subpoena and thus the court's judgment as to Hall is void. The Commonwealth contends that Hall was properly served in person by an investigator in the Commonwealth's Office of Financial Institutions. From our review of the record, there is no evidence of Hall being served with the subpoena. However, the Commonwealth contends that it does not seek to enforce the subpoena against Hall. Therefore, the question of whether Hall was indeed properly served is moot.

 Dolomite, Fenzell, and Hall also seem to attack the Commonwealth's subpoena power under the Commerce Clause. However, any argument under the Commerce Clause was waived because it was not raised before the Circuit Court and thus was not properly preserved for appeal. We further note that this argument was not asserted in the pre-hearing state-ment nor was any notice of this argument provided to the Attorney General.

We find that the Commonwealth did not exceed its investigatory powers by executing the subpoena on Dolomite. Therefore, we affirm the order of the Franklin Circuit Court enforcing the Commonwealth's subpoena issued to Dolomite and Fenzell. Further, because the Commonwealth does not seek enforcement of the subpoena as to Hall, we remand to the Franklin Circuit Court with directions to vacate the order enforcing the subpoena as to Hall only.

ALL CONCUR.