NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0014n.06

No. 22-5358

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Jan 09, 2023
DEBORAH S. HUNT, Clerk

CBA PHARMA, INC.,                                       )
      Plaintiff-Appellant,                               )
                                                         )
v.                                                       )
                                                         )
RAY A. PERRY, in his official capacity as Secretary    )
of The Kentucky Public Protection Cabinet,             )
      Defendant-Appellee.                                )
                                                         )

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY

OPINION

Before: BOGGS, KETHLEDGE, and WHITE, Circuit Judges.

**BOGGS, Circuit Judge**. This case arises from a state investigation of a consumer complaint of securities fraud. While the underlying issue is whether the state action is pre-empted by federal securities law, we must first determine if the case is ripe for adjudication and whether we have subject-matter jurisdiction.

**I. Background**

CBA Pharma, Inc., is a Nevada corporation with its principal place of business in Lexington, Kentucky. CBA has raised tens of millions of dollars for the development of a cancer-treatment drug which is currently undergoing the final phase of clinical trials as part of its Investigational New Drug Application ("INDA") with the U.S. Food and Drug Administration. CBA has also developed a dietary supplement, which it markets as Bright Star. CBA drug-development activities have been funded solely through private stock offerings to accredited investors. Two of those investors, Mr. and Mrs. Shiff, who had invested $2,000,000 in 2016 and

2017, came to believe that CBA was abandoning efforts to develop the cancer drug in order to focus on marketing Bright Star. CBA alleges that the Shiffs began to explore ways to replace the company's president, Mike Putnam, with the encouragement and assistance of Chief Operating Officer, Beth Gudeman.

In January 2021, the enforcement branch of the Kentucky Public Protection Cabinet, the Department of Financial Institutions ("DFI"), informed CBA that Mrs. Shiff had filed a complaint and that DFI was initiating an investigation for potential securities-law violations. DFI issued a subpoena for various information, including descriptions of fundraising activities; the progression and status of its INDA with the FDA; the percentage of funds raised that were used toward the approval of the INDA; stockholder lists; voting-trust agreements; balance sheets and general ledgers; and advertising and promotional materials.

DFI also sent a document entitled "Enforcement Questionnaire" to a small number of shareholders (exact number unknown) which included questions such as: "Detail information provided during the transaction that you think may not have been true and/or complete," and "[d]etail information not provided during the transaction that you think may have affected your decision to be involved." In its complaint, CBA alleges that the Enforcement Branch Manager at DFI, Jeff Jacob, initiated DFI's investigation of CBA to assist the Shiffs in their efforts to take over the company. CBA alleges that the Enforcement Questionnaire, in both title and substance, was an effort by DFI to drum up additional complaints and intimidate existing shareholders. CBA therefore states that it does not want to comply with DFI's subpoena to provide the names of all its investors.

In March 2021, CBA filed suit in federal district court for injunctive and declaratory relief to stop DFI's investigation on grounds that state regulation of the sale of securities is preempted

by the Federal National Securities Markets Improvement Act of 1996 ("NSMIA"). 15 U.S.C. § 77r. DFI filed a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss for failure to state a claim upon which relief could be granted because DFI had taken no administrative action beyond an initial investigation, CBA had suffered no injury, and, if DFI were to bring an action against CBA after it completes its investigation, CBA could administratively contest those findings of alleged violations pursuant to Kentucky Revised Statutes ("KRS") Chapter 13B. The district court granted the 12(b)(6) motion on grounds that DFI's investigation was ongoing and incomplete, and thus not ripe for adjudication. CBA filed this appeal.

## II. Statutory Framework

NSMIA, which amended Section 18(a)(1)(A) of the 1933 Securities Act, 15 U.S.C. § 77r(a)(1)(A), preempts certain state regulations with respect to "covered securities":

> (a) Scope of exemption. Except as otherwise provided in this section, no law, rule, regulation, or order, or other administrative action of any State or any political subdivision thereof - (1) requiring, or with respect to, registration or qualification of securities, or registration or qualification of securities transactions, shall directly or indirectly apply to a security that - (A) is a covered security; or (B) will be a covered security upon completion of the transaction . . . .

15 U.S.C. §§ 77r(a)(1)(A)-(B). A "covered security" includes any security exempt from federal securities registration pursuant to the rules and regulations issued under § 4(a)(2) of the 1933 Securities Act. *Brown v. Earthboard Sports U.S.A., Inc.*, 481 F.3d 901, 909 (6th Cir. 2007).[1]

But, federal preemption of state regulation of covered securities is not absolute, as NSMIA preserves state jurisdiction over fraud and deceit violations involving covered securities:

---

[1] NSMIA examples of a "covered security" also include securities listed on a national securities exchange, securities issued by a federally registered investment company, and securities offered to investors that have either substantial net worth or investment sophistication. 15 U.S.C. §§ 77r(b)(1)-(4).

> Preservation of authority. (1) Fraud authority. Consistent with this section, the securities commission (or any agency or office performing like functions) of any State shall retain jurisdiction under the laws of such State to investigate and bring enforcement actions, in connection with securities or securities transactions . . . with respect to . . . fraud or deceit . . . .

15 U.S.C. § 77r(c)(1)(A)(i).

In 1960, the Securities Act of Kentucky ("Securities Act"), also known as the Kentucky Blue Sky law, was passed to "[p]rotect investors by preventing investment fraud and related illegal conduct . . . ." KRS § 292.530(1)(a). The law's interpretation and administration are to be coordinated with federal regulation of securities. KRS § 292.530(2). The Securities Act makes it unlawful

> for any person, in connection with the offer, sale, or purchase of any security, directly or indirectly: (a) To employ any device, scheme, or artifice to defraud; (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

KRS § 292.320. The Kentucky Blue Sky law gives DFI broad authority to investigate consumer complaints. KRS § 292.460(1)(a). This broad authority exists

> [e]ven if one were to regard the request for information in this case as caused by nothing more than official curiosity, nevertheless law-enforcing agencies have a legitimate right to satisfy themselves that corporate behavior is consistent with the law and the public interest . . . . [It] is sufficient if the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant.

*Dolomite Energy, LLC v. Commonwealth of Ky. Off. of Fin. Insts.*, 269 S.W.3d 883, 886 (Ky. Ct. App. 2008) (internal citations omitted).

An investigation by DFI is not a final administrative action. Procedurally, if DFI believes that its investigation reveals a violation, the investigated party receives notice and has the

opportunity to be heard at an administrative hearing pursuant to KRS Chapter 13B. The DFI commissioner would then issue a final order based on his review of the hearing officer's recommendation and the record. KRS § 13B.120. After the issuance of a final order, a party can appeal to the Franklin County Circuit Court. KRS § 292.337; KRS § 13B.140.

Considering this statutory framework, CBA requests that we reverse the district court's ruling that the case was unripe; determine the scope of the NSMIA preemption; remand for entry of a declaratory judgment that all CBA securities are covered securities under NSMIA (and therefore preempted from DFI investigation) and that the fraud-and-deceit exception does not justify DFI's investigation; and order DFI to terminate its investigation of CBA. DFI argues that it has not committed a "final agency action" and therefore that the case is not ripe for adjudication. And even if it were ripe, DFI argues that it was properly investigating CBA under the authority provided by the Kentucky Blue Sky law and as allowed under the fraud-and-deceit exception of NSMIA.

### III. Ripeness

The threshold issue here is ripeness, which we review de novo. *Ammex, Inc. v. Cox*, 351 F.3d 697, 706 (6th Cir. 2003). "A court lacks jurisdiction over the subject matter if the claim is not yet ripe for judicial review." *Norton v. Ashcroft*, 298 F.3d 547, 554 (6th Cir. 2002). "A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas v. United States*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–581 (1985)). Until an administrative agency has taken "some concrete action applying [a] regulation to the claimant's situation in a fashion that harms or threatens to harm him," a matter arising from such a regulation is not yet ripe for review. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990). A ripeness

inquiry "arises most clearly when litigants seek to enjoin the enforcement of statutes, regulations, or policies that have not yet been enforced against them." *Ammex, Inc.*, 351 F.3d at 706. And, in the context of injunctive and declaratory relief where the remedies are discretionary, "courts traditionally have been reluctant to apply them to administrative determinations unless these arise in the context of a controversy 'ripe' for judicial resolution." *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 148 (1967).

To determine whether a pre-enforcement challenge is ripe, we consider whether the issues are fit for judicial review and if the parties will suffer hardship if we withhold adjudication. *Id.,* 387 U.S. at 148–49. In considering the former, we look at the extent to which our legal analysis would benefit from having a concrete factual context and the extent to which the enforcement authority's legal position is subject to change before enforcement. *Ammex*, 351 F.3d at 706.

Here, DFI has taken no enforcement action and is merely investigating alleged fraud. CBA filed this lawsuit specifically "to stop or severely curtail an investigation" by DFI. Legal analysis of the preemption issue at this stage would be premature, as the controversy lacks, and would benefit from, a concrete factual context. *Ammex*, 351 F.3d at 707 (The "need for more factual development . . . weigh[ed] against ripeness" where a party was "not challenging a specific rule or finding of the [investigating authority], but rather the general applicability of a statutory scheme to its conduct" by arguing the scheme is preempted by federal law). The investigation has not concluded, DFI has made no findings or alleged any wrongdoing by CBA, and DFI has not decided if it will, in fact, take any action against CBA. *See, e.g.*, *Univ. of Med. & Dentistry of New Jersey v. Corrigan*, 347 F.3d 57, 69 (3d Cir. 2003) (determining an action to enjoin an investigation was not ripe because "an investigation is the beginning of a process that may or may not lead to an ultimate enforcement action").

Since DFI has not even taken a legal position on whether it will bring an action against CBA, that position certainly is subject to change. *E.g.*, *Ibid.* ("[T]he possibility that no enforcement action may be taken is real for several reasons, not least of which is that the inspector general may change her mind on one or more issues along the way."). Even if this investigation were considered a final action, which it is not, *see, e.g.*, *Ass'n of Am. Med. Colls. v. United States*, 217 F.3d 770, 781 (9th Cir. 2000) ("An investigation, even one conducted with an eye to enforcement, is quintessentially non-final as a form of agency action."), CBA has failed to exhaust its administrative remedies under the Kentucky Blue Sky law and doing so would give DFI opportunities to change its legal position.

The harms that CBA points to do not outweigh these considerations. CBA can challenge the scope of DFI's subpoena in a subpoena-enforcement action. *See Google, Inc. v. Hood*, 822 F.3d 212, 224 (5th Cir. 2016). And concerns that the investigation will harass and intimidate shareholders are speculative. Although CBA alleges that its relationship with its investors is harmed by the investigation, no allegations suggest that any investors contacted by DFI pulled their investments, threatened to pull their investments, or reconsidered the investment relationship. CBA also contends the costs of complying with DFI's document requests will cause harm, but the record does not reflect (or estimate) what the costs will be. Further, even if CBA had sufficiently elaborated on the asserted harms, this factor would not tip the scales in favor of ripeness. *See Ammex, Inc.*, 351 F.3d at 709 ("[W]hatever hardship Ammex incurs by waiting for enforcement is not enough to outweigh the above-considered factors weighing against ripeness here."); *see also Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 300 (1979) ("Even though a challenged statute is sure to work the injury alleged, however, adjudication might be postponed until 'a better

factual record might be available.'" (quoting *Regional Rail Reorganization Act Cases*, 419 U.S. 102, 143 (1974))).

Therefore, this case is not ripe for judicial adjudication.

## IV.  Injunctive and Declaratory Relief

If this case were ripe, CBA's requests for injunctive and declaratory relief should be decided by the district court.  Because this case is not ripe, we lack jurisdiction over these issues.

## V.  Conclusion

For the reasons set forth above, we AFFIRM the district court and hold that this case is not ripe of judicial adjudication.